

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 05 C 1161 |
| | ) | |
| JOCELYN JIMENEZ | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jocelyn Jimenez pled guilty to a charge of willfully aiding in the preparation and presentation of false income tax returns to the Internal Revenue Service and a charge of corruptly endeavoring to obstruct the administration of the federal tax laws. The Court sentenced her to eighteen months in prison.

Jimenez has moved to vacate her conviction and sentence pursuant to 28 U.S.C. § 2255, contending that she did not receive effective assistance of counsel and that certain purportedly exculpatory information was not disclosed by the government. She says that as the result of counsel's ineffectiveness and the government's non-disclosure, her guilty plea was not knowing or voluntary. For the reasons stated below, the Court denies Jimenez's motion.

1. **Waiver of right to file § 2255 motion**

Jimenez pled guilty pursuant to a nineteen-page written plea agreement that included the following provision:

> 13. Defendant is also aware that Title 18, United States Code, Section 3742, affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in which that sentence is determined, in exchange for the concessions made by the United States in this Plea Agreement. *Defendant*

> *also waives her right to challenge her sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.*

Govt. Ex. 2, ¶ 13 (emphasis added). The government argues that this provision bars Jimenez's § 2255 motion.

The Court disagrees. A defendant may waive the right to file a § 2255 motion so long as she does so voluntarily. *See, e.g., Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000); *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). In this case, however, the wording of the waiver in the plea agreement is insufficient to bar Jimenez's challenge to her guilty plea. First of all, the plain language of the waiver is limited to challenges to the "sentence or the manner in which it was determined." Jimenez's motion attacks her conviction, not her sentence. The Court recognizes that the waiver is worded in the way that § 2255 itself is worded. But there is no basis to believe that Jimenez possibly could have understood the waiver to encompass challenges to her guilty plea itself (i.e., her conviction), as opposed to challenges to her sentence.

In addition, the Court's colloquy with Jimenez at the time of her guilty plea did not elicit an expression of understanding that the waiver would cover a challenge of the type that Jimenez makes here. The pertinent portion of the colloquy was as follows:

| | |
|---|---|
| THE COURT: | Under normal circumstances, you would have the right to challenge the sentence that I give you by appealing it to a higher court. Do you understand that? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Now, in this plea agreement, you have given up your right to |

| | |
|---|---|
| | appeal, and you have also given up another related right. Basically what it says that, with a couple of exceptions, you won't have the right to appeal your sentence, and *you also will not have the right to come back to me later on and ask me to reduce or vacate the sentence with a couple of exceptions.* Do you understand that? |
| THE DEFENDANT: | Yes. |
| THE COURT: | What it boils down to is that so long as I sentence you within the maximum possible penalties that I gave you, that I described to you earlier, *you are going to be stuck with the sentence that I give you, and you won't be able to challenge it.* Do you understand that? |
| THE DEFENDANT: | Yes. |

Govt. Ex. 3 at 13-14 (emphasis added). The Court's questions to Jimenez conformed to the language of the waiver – they focused on her right to challenge the sentence – and thus did not elicit evidence sufficient to support a finding that Jimenez realized she was giving up her right to challenge her guilty plea due to involuntariness or ineffective assistance of counsel.

For these reasons, the Court rejects the government's argument that Jimenez's § 2255 motion is barred by her plea agreement, and thus we need not address the more difficult question of what language in a plea agreement and what disclosures at a guilty plea colloquy would be necessary to ensure that a waiver of the right to file a § 2255 motion of this type was knowing and voluntary.

2.  **Non-disclosure of evidence**

Jimenez argues that the government should have disclosed that the "Internal Revenue Service is not part of the United States Government. [The] Internal Revenue Service is a private corporation. The 16th Amendment of the United States Constitution was never ratified and therefore made the Internal Revenue Service unconstitutional. [The] Internal Revenue Service is a foreign agent operating on American soil in violation of the Foreign Registration Act of 1938."

3

2255 Motion, ¶ 12A. This argument is unsupported, and, charitably speaking, it is frivolous. First, federal legislation establishes the IRS as part of the Department of the Treasury, which is undeniably a part of the United States government and which is charged with administering the Internal Revenue Code. *See* Pub. L. No. 105-206, Title I, § 1001, 112 Stat. 689 (1998); 31 U.S.C. § 301(a); 26 U.S.C. § 7801(a)(1). Second, the contention that the Sixteenth Amendment was not properly ratified is utterly lacking in merit. *See, e.g., Miller v. United States*, 868 F.2d 236, 240-42 (7th Cir. 1989); *United States v. Thomas*, 788 F.2d 1250, 1253-554 (7th Cir. 1986). The Court therefore rejects Jimenez's claim that the government failed to disclose exculpatory evidence.

### 3. Ineffective assistance of counsel

Jimenez's claim of ineffective assistance of counsel requires a showing that counsel's actions fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In the context of a guilty plea, proof of prejudice requires a showing that but for counsel's errors, the defendant would not have pled guilty but instead would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Jimenez first contends that her lawyers were ineffective because they did not advise her that the IRS was a private corporation. One would hope that no such advice was given, because it would have been untrue. Counsel's failure to give this advice plainly was not objectively unreasonable.

Jimenez next argues that her lawyers should have advised her that a "proffer" that she

4

gave to the government following her guilty plea would not benefit her with regard to her sentence unless the government was able to indict someone as a result of the proffer. A few days after she pled guilty, Jimenez gave an interview to government agents in the hope of obtaining a reduced sentence. At the time of Jimenez's guilty plea, the scheduled proffer interview was mentioned; the prosecutor made it crystal clear that "[t]here is absolutely no agreement on the table. There is no benefit promised. This plea agreement is not in any way affected by what may happen in the future." Govt. Ex. 3 at 25.

In addition, before giving the interview, Jimenez signed an agreement stating that the government sought a proffer of Jimenez's knowledge regarding possible violations of federal law; nothing she said would be used against her in aggravation of her sentence or in the government's case in chief; the government could pursue leads derived from the proffer and could use information obtained from such leads against Jimenez; and the government could use the proffer to impeach a later contrary statement by Jimenez. The penultimate paragraph of the letter stated that "[t]his letter embodies the entirety of the agreement to make a proffer. No other promise or agreement exists between you or this office regarding the proffer." Govt. Ex. 5 at 2. Jimenez signed the letter under an acknowledgment stating that "I, Jocelyn Jimenez, have read the above letter, discussed its provisions with my attorney and voluntarily agree to its terms." *Id.*

The discussion at the guilty plea hearing and the proffer agreement's disclosures belie any claim that Jimenez had any sort of an understanding with the government regarding a reduction of her sentence or the conditions under which she could get a reduction. In any event, Jimenez suffered no cognizable prejudice by participating in the proffer interview; consistent with the government's agreement, the contents of the interview were not used against her at sentencing.

With regard to the voluntariness of Jimenez's guilty plea, her plea agreement specifically stated that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty," and that the plea agreement, which included no representations regarding Jimenez's not-yet-given proffer or what effect it might have, was "the entire agreement between the United States and defendant." Govt. Ex. 2 at 1 & ¶ 22. In addition, the Court specifically asked Jimenez during her plea colloquy whether anything had been promised to her other than what was in the plea agreement:

> THE COURT: Does the plea agreement contain every agreement that you have with the government about your case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is there any agreement that you have with the government that has been left out of this plea agreement? I am asking you the flip side of the question that I just asked you. Do you have any agreements with the government that weren't put into this plea agreement?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anybody promised you anything other than what is in the plea agreement to get you to plead guilty?
>
> THE DEFENDANT: No.

Govt. Ex. 3 at 8. These admissions by Jimenez undermine her contention that her plea was rendered unknowing and involuntary by counsel's allegedly erroneous advice, as well as the statement in her reply that she would not have pled guilty had counsel advised her that she would not get a benefit from her proffer unless indictments were obtained. *See, e.g., Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (argument that counsel's erroneous advice rendered guilty plea involuntary belied by defendant's statements at change-of-plea hearing).

Jimenez also contends that her attorneys advised her that if she was found guilty at trial

6

on one of the charges against her, she would be found guilty on all the other charges and would be sentenced accordingly. Jimenez does not contend that this purported advice affected her decision to plead guilty. But in any event, the contention that she was misled is undermined by the disclosures in the plea agreement, which specifically stated that at trial, the jury would be told it had to consider each charge separately. Govt. Ex. 2, ¶ 11(b) & (c).

Jimenez's final argument is that counsel failed to advise her that a conviction in her case would lead to her deportation and that this rendered her guilty plea unknowing and involuntary. Were the Court considering this as an original matter, we would consider Jimenez's legal position meritorious (though we express no opinion on whether, as a factual matter, Jimenez could support her claim). For a non-citizen assessing the effects of a conviction, deportation is second only to imprisonment in terms of importance – indeed, for many non-citizens, being permanently separated from one's home, community ties, and in some cases one's family, is a consequence far more severe in its practical effect than imprisonment. For this reason, as the Supreme Court has aptly noted, "the American Bar Association's Standards for Criminal Justice provide that, if a defendant will face deportation as a result of a conviction, defense counsel 'should fully advise the defendant of these consequences.'" *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 322 n.48 (2001) (citing ABA Standards for Criminal Justice, 14-3.2 Comment, 75 (2d ed. 1982)).

But this Court does not write on a clean slate. Every Circuit to address the question, including the Seventh Circuit, has concluded that deportation is a "collateral consequence" of the criminal process and thus that the failure to advise the defendant of this consequence does not amount to ineffective assistance of counsel. *See, e.g., United States v. Fry*, 322 F.3d 1198, 1200

on one of the charges against her, she would be found guilty on all the other charges and would be sentenced accordingly. Jimenez does not contend that this purported advice affected her decision to plead guilty. But in any event, the contention that she was misled is undermined by the disclosures in the plea agreement, which specifically stated that at trial, the jury would be told it had to consider each charge separately. Govt. Ex. 2, ¶ 11(b) & (c).

Jimenez's final argument is that counsel failed to advise her that a conviction in her case would lead to her deportation and that this rendered her guilty plea unknowing and involuntary. Were the Court considering this as an original matter, we would consider Jimenez's legal position meritorious (though we express no opinion on whether, as a factual matter, Jimenez could support her claim). For a non-citizen assessing the effects of a conviction, deportation is second only to imprisonment in terms of importance – indeed, for many non-citizens, being permanently separated from one's home, community ties, and in some cases one's family, is a consequence far more severe in its practical effect than imprisonment. For this reason, as the Supreme Court has aptly noted, "the American Bar Association's Standards for Criminal Justice provide that, if a defendant will face deportation as a result of a conviction, defense counsel 'should fully advise the defendant of these consequences.'" *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 322 n.48 (2001) (citing ABA Standards for Criminal Justice, 14-3.2 Comment, 75 (2d ed. 1982)).

But this Court does not write on a clean slate. Every Circuit to address the question, including the Seventh Circuit, has concluded that deportation is a "collateral consequence" of the criminal process and thus that the failure to advise the defendant of this consequence does not amount to ineffective assistance of counsel. *See, e.g., United States v. Fry*, 322 F.3d 1198, 1200

(9th Cir. 2003); *United States v. Gonzalez*, 202 F.3d 20, 25 (1st Cir. 2000); *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993); *United States v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992); *United States v. Del Rosario*, 902 F.3d 55, 59 (D.C. Cir. 1990); *Santos v. Kolb*, 880 F.2d 941, 945 (7th Cir. 1989); *United States v. Yearwood*, 863 F.2d 6, 7-8 (4th Cir. 1988); *United States v. Campbell*, 778 F.2d 764, 769 (11th Cir. 1985). Even though some of these cases (including the one from the Seventh Circuit) predate the 1996 amendments to the immigration laws that made deportation a certain, or virtually certain, consequence of various types of criminal convictions, that change in the law does not affect the outcome, as deportation remains a "collateral consequence" as the law defines that term. *See Fry*, 322 F.3d at 1200 (citing *United States v. Amador-Leal*, 276 F.3d 511, 516 (9th Cir. 2002) (holding, in the context of a direct challenge to a guilty plea, that deportation remains a "collateral consequence" about which the trial court need not advise the defendant, even after the 1996 amendments to the immigration laws)); *Gonzalez*, 202 F.3d at 26-28.[1] It is likewise the case that Jimenez's claimed unawareness of the deportation consequences of her guilty plea is not a basis for a finding that the plea was involuntary. *See, e.g., El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002); *Amador-Leal*, 276 F.3d at 516.

It is not entirely clear to this Court why the objective reasonableness of a defense attorney's actions should turn on whether the particular consequence of a guilty plea is considered, from a legal standpoint, to be "collateral" as opposed to "direct." Presumably there

---

[1] Were Jimenez contending that her lawyers had affirmatively misled her regarding the deportation issue, she might have a viable claim. *See United States v. Kwan*, 407 F.3d 1005, 1015-16 (9th Cir. 2005); *United States v. Couto*, 311 F.3d 179, 187-88 (2d Cir. 2002). But that is not her claim; she alleges simply that her lawyers failed to advise her regarding deportation.

is concern that were courts willing to consider non-advice about so-called collateral consequences as constituting ineffective assistance, we might end up on a particularly slippery slope, given the wide variety of detriments that can follow a criminal conviction. But the fact is that courts are no less capable of line-drawing in this context than in others. *Strickland's* requirements of proof of objectively unreasonable representation and actual prejudice are amply sufficient to separate significant non-disclosures by counsel from insignificant ones. The Court respectfully suggests that the matter is worthy of a fresh look, in light of the severity of the consequences of deportation, the dramatically enhanced likelihood of deportation following the 1996 amendments to the immigration laws, significantly greater awareness among the defense bar of these matters, and the Supreme Court's comments in *St. Cyr.* This Court, however, is bound by the Seventh Circuit's existing assessment of the issue, and as a result Jimenez cannot sustain her claim.

### Conclusion

For the foregoing reasons, the Court denies Jimenez's motion under 28 U.S.C. § 2255. The Clerk is directed to enter judgment in favor of the United States. On the Court's own motion, we grant a certificate of appealability under 28 U.S.C. § 2253(c)(2) on Jimenez's claim of ineffective assistance of counsel concerning counsel's failure to advise her of the deportation consequences of her guilty plea. All other pending motions were previously addressed and are therefore terminated [# 3-1, 10-1].

Date: June 24, 2005

MATTHEW F. KENNELLY
United States District Judge